The appellant's argument is going to be on submission, but we're going to hear argument from the appellee. Ms. McCanfill. Good morning, Your Honors, and may it please the Court, Amy McCanfill on behalf of the appellees. Your Honors, this Court should affirm the shared conclusions of the IHO, the SRO, and the District Court that the plaintiff has not met her burden of showing that Ibrane was an appropriate placement for the 2023-2024 school year. And at the outset, Your Honors, I'd like to note that this case, the record of this case and the arguments that the plaintiff has put forth are very similar to the record in the case of the previous school year and the arguments the plaintiff asserted in that case as well. In February 2026, this past February, this Court, via summary order, affirmed the denial of the plaintiff's reimbursement claim for that school year. That was, again, a shared conclusion of the IHO, SRO, and District Court. And here, again, because the record and the arguments are so similar, this Court should do the same. In fact, here the record is even weaker for the plaintiff because the plaintiff was aware of the shortcomings in her case in the previous year, and she did nothing to correct those deficiencies. Okay, so I agree that they're similar, but, you know, it was a summary order, and maybe it's not right. So let me just think about that. So if the question is whether it's an appropriate placement, what are we trying to figure out? We're trying to figure out whether it's an education that's reasonably calculated to benefit the student with the disabilities, right? Yes. So if we have in the record a pretty elaborate education plan that goes into detail on all of her disabilities and explains the technology they're going to use and the educational goals they're going to set and so on, and we know that the school is a specialized school geared toward students with disabilities, why doesn't that show that it's a placement where the education is reasonably geared to benefit the student with disabilities? Well, Your Honor, the totality of the evidence here did not support the plaintiff's claim, and for two main reasons. First, we do have the I-BRAIN EIP, which you just referenced. That was dated February 2023. That was a few months prior to the date of the actual school year. So the EIP by itself does not show that the program was actually implemented. There's no educational record from I-BRAIN hosting the EIP. Yeah, but is that, I mean, you know, is your claim that I-BRAIN is like a scam and like they don't really provide education or, or, or, or what? Like, right, that's, that would be the idea. Well, they've set out a plan, but, you know, we have no reason to expect them to follow through. But isn't there reasonable inference that like that's the way they're going to deliver education to the kid? I think if there was any kind of record, service delivery record, a provider note, that would give the Court more assurance that this plan to a large extent or some extent had been put into place. But here there's, there's nothing. And moreover, there's no record to show that the student has progressed from the, the plan that was approved. We don't need the evidence of progression, right, because the IDPA doesn't guarantee any particular educational outcome. It just guarantees an education that's geared toward creating a likelihood of progression, right? But it might be that you don't progress for whatever reason, like education's complicated, right? We've said that's not necessary. We don't need to show evidence of progression. It's a totality of the evidence, and, and, but here, again, not only was there this evidence missing from the record, and it's the same evidence that was missing from the record in the prior case, but this was evidence that the plaintiff herself actively suppressed. DOE attempted to introduce records of the quarterly progress reports into the record, and the plaintiff successfully objected to those records. So here we don't have any records of the provider. I was going to ask the plaintiff, but I guess the plaintiff is not here. So, but do you know why the plaintiff objected to the introduction of those records? Well, the, the basis of the hearing was because DOE hadn't provided the notice that they would be introduced. But as the IHO noted, it was very odd for the plaintiff to object because these are records that are coming from the school itself. And all the records that DOE sought to introduce in the hearing, the quarterly progress reports, the nursing forms, the medical records, those were, none of those should have been a surprise to the. And so what did the DOE want to show by introducing the records? What would it have shown for the DOE? I don't know because I haven't seen them, but I do think the fact that these records are missing from the record, when they were missing from the record in the school's, the student's prior case, it certainly undercuts her claim. And here, it's not just a lack of progress showing in this case, right? I think there's a, this plan was February, right? And it's unclear, I guess, based on the plan, whether that plan was even intended to be the plan implemented for the school year starting in August. Is that right? It's what the IRO says. Or the IHO. Sorry. Got too many acronyms in this case. I think it's, it's unclear whether all of the plan was ever put into effect or how much. Well, it also says, it says the February 2023 plan does not state that it's intended to be implemented during the 2023-24 school year. That is from the SRO on A-76. So the SRO is going further than just saying there's a plan, but we don't know if it was implemented. The SRO is saying there's a plan, but we don't know if it's even the plan, right? Yeah. The SRO does say this, the February 2023 I-grade plan does not state that it is intended to be implemented during the 2023-24 school year, which was at the time almost five months away. But isn't that, isn't that kind of silly? I mean, if they're generating a plan in February 2023 and the, for this kid's education and the next school year starts that fall, wouldn't the natural inference be that they're setting up a plan for that fall? And we also know from the last case, because in the summary order, that they had a plan the previous year, for the previous year. So like, doesn't it just seem that they create a new plan every year for each year? I think one observation from the SRO that is particularly, I think, pertinent here is the SRO noted that the IEP that was proposed for Ibrane is very similar to the IEP that DOE proposed. So if it was enough for the plaintiff to simply, to Ibrane to simply repackage the DOE IEP and say, this is a sufficient plan and then get the close to a million dollars in reimbursement for the plaintiff student on that basis, that's not meeting the showing that this is an actual  I think that's kind of a good point. So the IEP, the state has conceded, or the district conceded that they're not providing a free appropriate public education in the public school placement, right? We did not defend it at the hearing. Right. Okay. So it might be that the, it's because the IEP was deficient. I take it that the public placement wouldn't have even had a wheelchair ramp and maybe that's the reason why they couldn't provide a free appropriate public education. But they're not. But if Ibrane has laid out the services that were going to be provided in the IEP anyway, doesn't that suggest that it is a, that it is appropriate, right? Perhaps, but again. So is your position that if Ibrane were delivering the services that are articulated in its plan, that would make it an appropriate placement? And the only reason we think you think it's not appropriate is because we don't know whether they followed through on the plan. It's two main reasons, Your Honor. It's the, we don't know how much of the plan was actually implemented and we don't have evidence of progress. And again, it's a tally of circumstances. So it's not. It seems to me that the district courts rely on the credibility determinations and the testimony from the hearing. How are we supposed to treat that for the purposes of our view? Because it seems to me, frankly, if there's any nexus around which the decision is turning, it's on what the testimony was and the credibility of, and the absence of, frankly, that the district court is crediting. Sure. So this Court should defer to the credibility determinations of the IHO and the SRO in the lower court here. And there was good basis for the credibility determination that Ibrane's witness was not credible. Ibrane's witness misstated his own qualifications and the qualifications of the student's classroom teacher. And even putting aside the credibility issue, Ibrane's witness did not provide services to the student, did not directly teach the student, and repeatedly affirmed that special services, which comprise the vast majority of the student's program, is outside the scope of his expertise. It's a very similar witness to what the plaintiff put forth for the prior school year, which again, this Court found was not sufficient to show that Ibrane was an appropriate placement. So really, the plaintiff's case, it all boils down to this witness that's not credible, and this IEP that's— But you said the witness is incredible. It's true that the state adjudicators decided that the witness wasn't credible for all purposes. But then the district court says, well, I think that's too much. Like, I don't think it's right to say that he's not credible for all purposes. But it's true that he's not fully informed about things. So you should be cautious about relying on the testimony. So that means that from the perspective of the district court, some of his testimony is credible, right? I think that's right, that the district court and the IHO SRO disagreed about how much the lack of credibility undermined his testimony. But they all agreed that he had a credibility problem. And moreover, again, he had little insight as to the actual program that was provided to the student or her actual progress, because again, he did not teach the student and did not provide services to the student, just like the Ibrane witness that the plaintiff put forth for the court. I guess the thing that I have trouble with is this, which is we've also said that the way to determine, the standards for determining whether a parental placement is appropriate are the same as determining whether a public placement is appropriate, right? I think it's actually a lower standard to show that a parental placement is appropriate. But here, again, the plaintiff... Right. And so when we talk about whether the public school district is providing a free, appropriate public education, we focus on the IEP, right? Yes. And so we say they're designing a curriculum that's geared to help the student benefit and so on. That's what we focus on, right? We don't say, well, even if the IEP is really good, we have to confirm that they're actually doing it and that kind of thing, right? So why shouldn't the same thing apply here? Why shouldn't we just say they've designed an IEP that does seem pretty geared to the student's unique disabilities and that does take account of the student's unique disabilities and that shows that it is an education that's reasonably calculated to benefit the student? So if we have this separate requirement of progress reports and implementation and whatever, it seems like we're doing something different than we do when we evaluate a public school placement. Well, a couple points, Your Honor. The reason why we evaluate the public school placement at the IEP is because in these kind of reimbursement cases, the parents have chosen to unilaterally place the student in a private school. So we can't evaluate the public placement as it would have been provided because it hasn't been provided. The student is in a private school now. But once a student is in a private school, this Court looks at the totality of the circumstances. And it's not necessarily that the plaintiff has to show any one of the things we're talking about. Again, it's the totality of the circumstances and the SRO, the IHO, the State Administrative Officers. Yeah, that's right. They look at the totality of the circumstances. So, you know, a lot of times the private placement doesn't have the equivalence of an IEP. Like you just put a student in a private school and the private school teaches the student and makes accommodations along the way. And in those kinds of cases, we say it's very important to get information about what the school is doing and how the student is benefiting and so on. But when we do have a specialized school that develops its own IEP, why isn't that pretty  Well, a couple points again, Your Honor. As the SRO noted, again, the IEP that Ibram put forth is virtually the same as the IEP that DOE proposed. So if it's enough for the private school just to copy the public school IEP and then, again, here they're seeking close to $800,000 in reimbursement, that's far too low of a bar to get this kind of reimbursement under the second prong of the Burlington-Carter test. There has to be some showing. Well, it would be open to the state, to the adjudication, if they think that the cost is too high, you know, on the third prong on the equities and so on, to say, well, actually you don't get that much money, right? Sure. That is the third prong issue, Your Honor. Right. So at step two, we're not deciding you're entitled to $800,000. We're just deciding whether the placement is appropriate. But more needs to be shown than just a rehash of the school IEP. There needs to be a showing that this program was actually individually geared to the student in a way that enabled the student to make progress. And here, again, the only educational record we have in the record due to plaintiff's own litigation tactics is the IEP. So what's the other, so what evidence, so what is the minimum evidence that would need to have been introduced to show that it's an appropriate placement? Well, again, the totality of circumstances, it could be all sorts of evidence. But the evidence this Court pointed to in the February 2026 summary order that was missing in the prior case were provider notes, quarterly progress reports, testimony from the teacher, testimony from the service providers. None of that was in the prior case. None of that was in this case. So the SRO and the IHO, they are specialized at determining whether these are appropriate placements for the students. But, again, you'd agree that if we're evaluating whether the public school placement is appropriate, you don't normally do that. You don't, like, bring in the teachers to talk about all the details. Like, you evaluate it. You're focused on the IEP, right? But, again, Your Honor, that's of necessity. Because when the parent places the student in a private school, there is no public school year to review. You only have the IEP that was proposed or rejected for the public school. So that's, by necessity, there are different standards that apply. And the bar is lower for parental placement. They just need to show that the school was designed to enable the student to make progress. But here the parents have not even met that bar, just as they haven't met that bar in the prior case. Because, again, the record does not show to the degree to which this plan was actually implemented. So the plan shows that it's designed to make the student achieve progress. You're just saying we need additional evidence that it actually, they followed through and there was progress. In totality of the evidence to show that this was an appropriate placement for the student, yes. So for all these reasons, Your Honor, we ask this Court to affirm the shared conclusions of the IHO, the SRO, and the District Court that the parent had failed to meet her burden to show that this was an appropriate placement for the school year. Okay. Thank you very much. Thank you. The case is submitted.